Case No. 23-3565 U.S.A. v. Larry Householder Argument not to exceed 15 minutes per side Mr. Bradley for the appellate May it please the Court, Stephen Bradley on behalf of appellate Mr. Larry Householder. I reserve five minutes of my time for rebuttal.  Your Honors, the trial court in this matter violated Mr. Householder's First Amendment right to counsel when it engaged in off-the-record ex parte communications with one of the sitting jurors mid-trial and ultimately made the unilateral decision to remove that juror and thus change the composition of the jury. And this represented a fundamental alteration of the entire proceeding and thus constituted structural error. And when you're considering this issue... He did talk to one of the defense counsel. There were multiple defense counsel, right? That is correct. I thought he did talk to one of them. Is that not right? So, yes, if I can just put that in context. One of the jurors in this case had tested positive for COVID and thus there was a multi-day recess in the trial proceedings. And on the particular date at issue here, the court had sent an email communication advising that the judge had direct ex parte unrecorded conversations with this juror and then sent an email to counsel advising that it had made the decision to remove this juror. An hour after that email communication, the judge's law clerk had a telephone conversation with one of the members from the defense team, essentially discussing logistics in anticipation of the return to the trial proceedings the following day. And roughly 20 minutes after that telephone conversation, another member of the defense team had sent an email to the court advising that the defense did in fact object to the court's communications with this juror and the decision to remove it. Counsel, how do you get past this language in United States v. Warren where the court said, the court being us, we said that the substitution of an alternate for a juror for reasonable cause is within the prerogative of the trial court and does not require consent with counsel. So generally the court does have discretion in determining whether a juror can be replaced by an alternate juror. We don't dispute that. What is at issue, however, is that we as the defense have a right to participate in that process, that we have a right to participate in the court's communications with this juror, that we have a right to question this juror, that we have a right to, for example, suggest that there's less restrictive means or other options other than replacing this juror. So you're making a distinction between the court not needing consent of the party with it just being involved in the process. Is that the distinction you're making? That's exactly right. And thus, in having the communications directly with this juror and without our participation, then Mr. Householder's denied his right to counsel in that situation. So that is exactly right. And ultimately, this amounts to structural error that we think the court can presume prejudice and would require vacating the judgment of conviction. If it wasn't structural error, do you lose? I'm sorry? If it wasn't structural error, is it a problem for you? Well, no, because ultimately, given the fact that there's no record of the court's communication with this juror, that... So was it the judge just put on the record that he wouldn't comply with the COVID mandate, that he wouldn't wear a mask, or the courtroom, the court mandate that he wear a mask, that he wouldn't get tested, those types of things? That was just the judge put it on the record? Well, so ultimately, I would analogize this somewhat to the jury selection process, where we have a right as the defense to participate in the process, to evaluate the prospective jurors, in my hypothetical, the prospective jurors' demeanor, sincerity, have a chance to participate in that process. Let's say it was a different scenario. Let's say that the juror just got sick and was not feeling well. Is it your position that the judge has to then bring the juror out so that she can be potentially questioned by the counsel you can affirm and see with your own eyes that, oh, yeah, she's really sick? Yeah, we see that. We don't have any questions for her, Judge. Is that what you're saying? What I'm saying is that we have a right to participate in the process. What does that mean, though? Well, so in your situation, it wouldn't necessarily mean that we don't know in this particular case how the court communicated with the juror, whether it was, for example, by telephone, by Zoom. Let's say email. Let's say what happens common, going to go back to Judge Davis' hypo, is they call into the clerk's office and they say, I'm sick, I'm throwing up, I can't make it. And that is communicated to the judge. This happens all the time across the country in these cases. And the judge then says, that's okay, that juror can be excused, we have alternates, and then tells the parties, hey, I excused that juror because they were sick. So what are you saying you're entitled to in that hypo? So in that hypothetical, we would be entitled to have the opportunity to engage. If the court's going to question that juror, then we have a right to participate in that questioning process. So it's only if the court, so if this communication was all made to the clerk's office, not wearing the mask, I'm not taking the test, I'm not doing this stuff, it's fine. But as soon as the communication is to the court, you have a right. I believe that's correct, because ultimately that is the point. So communication to the clerk's office isn't to the court? Well, not to the judge questioning the juror directly. And so by the court engaging. Did Judge Black say he questioned the juror directly? Well, the e-mail communication is somewhat ambiguous on that, but suggests I think a fair interpretation of the e-mail communication was that the judge communicated. So the right hinges, just so I understand, on whether or not the judge questions the juror, not on what the judge ultimately decides. That is correct. The key being when the court is communicating directly with the juror, then we as the defense should have the opportunity to participate. You might want to move on unless. Very good. Thank you. So moving on. Key issues also relate to the instructions of law that were provided to the jury. Can I ask you about that? So let's talk about the instruction and McCormick, Evans, and Skilling. Because it seems to me, as the government argues, that the instruction was in some sense blessed by those cases. Tell me specifically where it's not and why. Two places. Number one, as it relates to the state court bribery instruction. And there's two problems with the state court bribery. First is that nowhere in the state court bribery instructions is the requirement that a jury find that there's been an agreement. Didn't the government argue, though, to the jury, and couldn't you find under Nader that it was harmless? Let's say I agree with you on that. It doesn't mean they do, but let's say I do. Couldn't you argue that's harmless because the government, in essence, argued quid pro quo to the jury in closing and the evidence of the other bribery was in exchange? No. In fact, in closing argument, the government specifically argued, and I'm quoting, that if householder received money knowing that the bribe payer is giving with the expectation that they will get the legislation of official action, that is bribery. Say it again.  If householder received money knowing that the bribe payer is giving it with the expectation that they will receive or get the legislation or official action, that is bribery. Isn't that great for skilling? No. That is not. That is, so in other words. Or McDonald, I'm sorry. That is not an agreement by definition. But isn't that what we said also in Terry? Terry was the case where there was the agreement that there would be cases fixed in the future, but there was no specific case that they had agreed was going to be fixed. There was an expectation that the cases would be fixed. Well, that's a slightly different issue than what we're addressing now. Specifically, what Terry said is there must be evidence of an agreement, hard stop. And then the second component that is also part of our challenge to the instructions would relate to that agreement has to contemplate a specific and focused question at the time the agreement is entered into, and that's the second flaw in the court's instructions here, particularly as a state court bribery, is that there's no requirement that there be an agreement related to a specific focused question or matter. And I go back to McDonald because it says, if the evidence shows that the public official received a thing of value, knowing that it was given with the expectation that the official would perform an official act in return. So tell me where the government's language departs from that. So ultimately, I'm looking to Terry primarily and McCormick and McDonald that all require an agreement. That is not in dispute. There must be an agreement, a clear, unambiguous, and explicit agreement, a this for that. And if, for example, if I give you something and I have an expectation that you're going to give me something in return, that doesn't mean that you are entering into the agreement. That's just my expectation. And that is the fatal flaw in the instructions, or at least one of them, as it relates that it allowed the jury to find that state court bribery had been committed in the absence of the agreement that McCormick and Terry, et cetera, all require. I see my time is up. If there's no other questions, then I'll reserve the balance of my time.  Thank you, counsel. Thank you. May it please the court. Alexis Zuhairi on behalf of the United States. I'd like to start with the Sixth Amendment claim. Unrecorded ex parte communications between a judge and a juror are subject to harmless error review. That's not a structural error under the Sixth Amendment. And for the reasons we note in our brief. Why didn't he consult counsel before dismissing a juror? That just seems routine practice. Well, Your Honor, the court did consult the parties before. The court sent out an email, stated the reasons for the dismissal, including that this juror would not heed the mask requirement. That's not consulting. That's telling. I mean, that's like saying, I dismissed the juror. Here's why. Well, I think in context, in the sequence of the emails makes clear. The court stated the reasons that it was going to dismiss the juror, and then phoned all of the parties, including counsel for Mr. Householder. Counsel for Mr. Householder said he was amenable to the dismissal. This is in the record. And the district court put this on the record in multiple places when this became a subject of dispute. And I did want to make one additional point on this, because my colleague in his brief tried to suggest that because the court's email indicated that it was dismissing the juror now, that the juror had been dismissed and there was no reason to object. And I just wanted to point the court to the context. Context makes clear that by now the court meant before trial resumed the next day. On the call with the court, Householder's counsel stated they would be willing to agree to a further continuance if the court was inclined to wait for the juror to receive his results. And Householder's reply brief acknowledges that counsel made that statement. That's their brief at footnote 7. If counsel had actually understood the court's email to say this juror has already been dismissed, there would have been absolutely no reason to express a willingness to agree to a continuance. So we think the record is very strong. This claim fails right out of the gate. The record doesn't support it. And in any event, any error would be harmless, because essentially the district court swapped one impartial juror for another impartial juror and had a reasonable cause for the excusal. If there are no further questions on the Sixth Amendment issue, I'll turn to the state bribery instructions. And in his brief, Mr. Householder argues that McCormick's explicit quid pro quo requirement should have applied to the Ohio bribery statute. Now, the jury in this case was instructed on state bribery consistent with Ohio law, and I want to explain why the government believes that was correct. In McCormick, the Supreme Court engrafted an explicit quid pro quo requirement onto the Hobbs Act extortion statute to narrow what under color of official right meant. There's absolutely no basis to superimpose that judicially created standard onto a state bribery statute that does not share any of the same language and, in fact, is much more narrowly drawn. And so the government's point here is that the state jury instructions amply take care. Isn't that motivated, at least in this context, a little bit by the First Amendment concern? So why wouldn't it apply equally to the state statute? Well, I think that that's one way to read McCormick, is that it's animated by First Amendment concerns. We think that the explicit quid pro quo. How else would you read it? I think that you could read it as a statutory interpretation decision that's closely tied to the Hobbs Act extortion language, but I'm not going to quibble with your interpretation. Well, just in general, if you don't have a quid pro quo, then all campaign donations could be penalized by a state. Well, and let me get to why this specific state bribery statute takes care of any First Amendment concerns. No, it doesn't use the explicit quid pro quo language that was tied to undercolor official right. This state statute requires the official to knowingly solicit or accept a thing of value, intending it to corrupt or improperly influence him with respect to the discharge of his duties. So McCormick's concern about criminalizing innocent campaign contributions is taken care of, and it's taken care of through the mens rea, and that's often how First Amendment issues are taken care of. Can I ask you about the Hobbs Act extortion bribery? Because the second part of the instruction says, a public official's receipt of things of value, when the public official knows that the person who gave the thing of value was doing so in return for the public official performing or agreeing to perform a specific official action. That seems really problematic to me, and let me explain why. It says that the person is receiving it, knowing that he's receiving it because he's going to perform a specific action. But this happens all the time on the campaign trail. People promise to perform a specific action. You just listen to two presidential candidates promise to do certain things, and they got donations as a result. This would seem to capture that. Unfortunately, I don't know that they raised that argument, and I don't have that portion of the instructions in front of me, but our instructions taken as a whole required an agreed-upon exchange, and that exchange is key. Let's look at the instruction. I don't see where it says that it necessarily does. When you quote, the way they define in the instruction, quid pro quo and agreement, was with the language I just gave. So when you in your brief on page 70 cite quid pro quo and agreement, that's not the way the instruction works because it says this is sometimes, so it says the sentence about agreement, then it says this is sometimes referred to as a quid pro quo, and then it defines it. It says a bribery exchange can include either, and then it's an or and it gives the sentence I just mentioned. I don't have that portion of the instructions right in front of me because this issue wasn't raised, but I believe that our instructions came verbatim from the Supreme Court's decision in Evans, in McCormick, and this Court's decision in Terry. Just on the raised point, I thought, and I can't remember the specific footnote. It might be seven, but I might be wrong. They dropped a footnote. I'm not saying the footnote raised the argument, but they say that they objected to the instruction ahead of time in written objections and asked that it include specific language. And so why isn't that raised? I'm not sure. I'm not sure what Your Honor is actually referring to. I mean their main argument here as to the federal bribery instruction was. . . Which is what I'm talking about, right? I'm talking about the federal bribery instruction, and the federal bribery instruction. . . They were actually contesting the language that you previously talked about, which came verbatim from McDonnell. That was what the agreement. . . But that had to do with the state bribery instruction and whether it was harmless. I was making the point to them that what you cleaned up at closing the state bribery instruction by arguing the language of McDonnell to bring the state bribery instruction within the confines of McDonnell. Now what I'm asking you about is in the Hobbs Act extortion bribery instruction, is there a problem? And let me just give you. . . If a candidate runs on building a dam because the ranchers want a dam built, if someone takes the candidate to lunch because they're going to build the dam when they get elected, is that included? No, absolutely not. What if they give money to a PAC for the candidate because they want the dam built? No, absolutely not. There needs to be an agreed upon exchange of this for that. The public official needs to be accepting something, knowing that it's being given for specific official action if we're under McCormick. And in your honors hypotheticals, that's not covered. So you agree that if they were willing to do the act ahead of time and then they get money, it's not covered? If they were willing to do the act ahead of time and then they get money. What matters for purposes of quid pro quo bribery is whether or not the public official is indicating that there is an agreed upon exchange. I am going to do this official action in exchange for this specific contribution. So what if I run on building the dam and then someone gives me a million dollars and they say, you better build that dam? No, because there's not an actual exchange. There needs to be an exchange. What if I reply, well, you know I'm always pro-dam building. I mean, there needs to be an absolute exchange. That would be an issue. Well, in this case, did he say, I will propose House Bill 6 and it will give you. Well, we had extensive. How specific does it have to be? Well, it has to be, if you're under McCormick, it has to be an explicit quid pro quo, and that's an issue for the trier of fact. But the evidence in this case was overwhelming as to the explicit quid pro quo. Can I read you, that's a separate argument, but can I read you this in the instruction, however it is not a defense to bribery for the public official to claim that he would have lawfully performed the official action in question even without the payer having promised to provide or having provided the thing of value. That seems to cut against the quid pro quo. I don't, what is illegal is the public official stating that he will do an official act in exchange for something, and I don't think that's covered by, and it may be a fine line, but that's the line that's been drawn, at least under federal bribery law. But you just said that if he was going to do it anyway, there's no quid pro quo. This seems to cut against that. What matters is what the public official is conveying to the briber. I agree with that, but I'm talking about the instruction. So imagine my hypothetical, you said no, you're not guilty if you promise to do it ahead of time, but this seems to say you are still guilty. The instruction. I disagree with Your Honor. Okay, explain to me why. That's what I want to know. Could Your Honor direct me to the page in the instructions? It's page 35 of 74, page ID, you cited it in your brief, 10606. Do you have it? I don't have it. Here, I'll give you mine. It's all marked up, so I'm sorry. I highlighted and underlined it. It's underlined portion, the bottom. Yes, I understand that to be black letter law. What is criminalized in bribery is the actual exchange. It's the public official indicating to the briber, no matter if they were going to do it previously, that this specific campaign contribution, we're not even in a campaign contribution setting. We haven't gotten to that. We're in a sham 501c4 setting. We're arguably, we're not even. I know veneration now, all that, but I want to understand my question. You're saying, so would that be included then, that I'm going to do it no matter what, and now you give me money because of that. I'm going to build a dam. I host a fundraiser to build the dam, and people, it's $10,000 a plate, and it's my commitment. Come show me how committed you are to me building a dam. Your Honor, it comes down to the exchange. I don't think that what Your Honor described would amount to it. This needs to be an explicit exchange. Look at the next sentence. Why, if I'm at a fundraiser, and the donor knows I am giving you $1,000 expecting that you are going to support this legislation, and I'm a politician, and I take the campaign contribution, knowing that you expect me to support this legislation, and I, in fact, support this legislation. Don't we have a meeting of the minds there? We both know that I'm supposed to support this expectation, support this dam, in exchange for your contribution. Well, Your Honor, I think that the law is clear that that would, depending upon the facts, be okay, but what you may not do is say, I am accepting your donation, and in exchange for your donation, I am going to get House Bill 6 passed. But we know that a wink and a nod also can do that, right, from Evans, from Blanford, from Terry, from all these cases, right? So I'm just handing you a check, thinking to myself, I'm handing you this check because you're going to support this legislation, and I, a politician, I know that that's why you're handing me the check. Of course I know that. That's what this whole fundraiser is for. Why is that not an exchange right there? Your Honor, it needs to be more explicit, but I will say that we're completely far afield from the actual facts in this case. The instructions matter. If they could hypothetically have convicted him for innocent conduct, then you're under Nader, right? So you're in a different world if there's error versus if there's no error. If there's no error, you win going away. If there's error in the instruction, we're in a completely different world. That's true, and I think for the reasons in our brief we show how we satisfy Nader here, the evidence of assuming that you're applying the McCormick standard and not a standard that might apply to these sham contributions, which were really more akin to like receiving a brown bag full of cash. This was a sham 501C4. We're not talking about campaign contributions in this setting, and we dropped a footnote to the fact that, in our view, McCormick doesn't even apply in this situation. Can I give you one more sentence, the next one? I just have real problems with this. In simple terms, taking a bribe is unlawful, even if the public official would have performed the official action anyway or even if the official action is desirable or beneficial to the public. I mean, it just seems like the way bribe has been interpreted here is just all campaign donations. Well, Your Honor is making arguments that I don't think that they have advanced in their brief. In addition, I think that our bribery instructions hewed to the controlling law, particularly this Court's decision in Terry, the Supreme Court's decision in Evans. I don't remember Terry blessing this language. I see my time's expired. If the Court has more questions, I'm happy to continue. Any further questions? We ask that the Court affirm. Okay, thank you, counsel. Can I have that page back? Thank you. Thank you. So just responding to some of the Court's hypotheticals here, that is precisely what the government argued in its closing argument, that if First Energy made contributions to householders' benefit, that they would have and had an expectation that he would follow through with legislation, that he had a long history of supporting that that's tantamount to a crime. But, I mean, here's my real problem. Look, if I was on a blank slate, I agree with you. I have real problems. I've just expressed them. McDonald seems to bless this instruction. I mean, that seems to be the real problem. It says, if the evidence shows that the public official received a thing of value, knowing that it was given with the expectation that the official would perform an official act in return. And that seems like it blesses everything that was done here. I'm not saying these are a model of clarity. I'm not even saying these are good instructions. I don't think the government should have asked for them. I don't think the judge should have given them. Having said that, the Supreme Court case law is all over the map on this. I mean, Evans is even worse in some sense for you than McDonald. But ultimately, considering the entire body of law on this issue, what is indisputable is that there has to be an agreement. And when you are talking, if I give you money with an expectation that you're going to do something for me, by definition, that is not an agreement. In fact, that is everyday politics that happens all day, every day. But you agree McDonald used the language expectation. The expectation that the official would perform. That is correct, but that is inconsistent with the idea that there has to be an agreement. I tend to agree with you. Aren't the facts more specific here? The First Energy needed something fairly specific, which is a bailout for their nuclear energy arm. And that was being discussed. I mean, there were two cooperators that testified at trial about basically what was understood. I mean, it wasn't we want exactly what was in House Bill 6, but it was pretty close, wasn't it, on the facts? So generally, yes. But, again, this is consistent with one of the court's hypothetical moments ago, that these are views that Mr. Householder had long expressed well before there was any communications with First Energy about their needs for this particular legislation. In fact, there was a similar bill that was introduced into the House, that proposed virtually the identical proposals that are represented in House Bill 6. Why does that help, Mr. Householder? If he's doing it in exchange for value, for money, then regardless if there's an independent bill is beside the point. I'm only making the point that he's long held these particular views. That's why, in this case, First Energy, but not just First Energy. Many other organizations and individuals made political contributions to support Team Householder and Mr. Householder himself, because they knew and understood that Mr. Householder I thought the government said in their brief, like, 56% of all Generation Now's money came from First Energy. Which is another way of saying 46, or 40, excuse me. Whatever it is. But the point still being, a large majority came after the bill was passed, and there was this recall effort. There seems to be, I mean, a lot of things went on there, including like 30 million coming in, just to beat the recall effort. Well, that's right. And again, there's nothing improper or illegal about that at all. Unless they're doing it for his official acts, which is pressuring Yost from his position of power, writing a new bill as a tax to get around the recall. It seems to me if that's what they're doing, then that matters. But that's, frankly, not what they were doing. But that was presented to a jury, and a jury accepted that that is what they were doing. So ultimately, and that is subject to review by this court, because ultimately what the jury has to have determined was that the monies that were paid by First Energy were conditional on Mr. Householder taking his official actions. And there's no evidence to support that conclusion. Or certainly wholly insufficient evidence. What you have is a situation where, frankly, politics as usual, where people pay money to support politicians that they know and understand, are supportive of issues that are important to them. And so that's that fine line that the government just alluded to moments ago. And ultimately, that's not criminal. What do we do with the fact that the district court was following in large part, as your friend said, the pattern instructions? Well, so to the extent that the pattern instructions are inconsistent with the McCormick standard, that there be an agreement that is explicit, clear, and unambiguous, they're wrong. They're erroneous. Okay. Anything further? All right. Thank you, counsel. Thank you, judges.